```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NEW HAMPSHIRE
```

ECCO Retail, Inc.

    v.                                   Civil No. 10-cv-211-LM

The Comfort Group, Inc.

O R D E R

On April 13, 2010, ECCO Retail, LLC ("ECCO Retail"), a wholly-owned subsidiary of ECCO USA, Inc. ("ECCO USA"), filed this action in Rockingham County Superior Court against The Comfort Group, Inc. ("TCG").  TCG thereafter removed the action to this court.  TCG now moves to dismiss this case on grounds of forum non conveniens, arguing that dismissal is necessary because TCG is already subject to an identical lawsuit brought against it by ECCO USA in Massachusetts.  TCG asserts that if this case is permitted to proceed, TCG will be subject to the same lawsuit in different venues.  In the alternative, TCG requests that this court stay its proceedings until such time as the litigation in Massachusetts has concluded.  Oral argument on TCG's motion occurred on September 2, 2010.  For the reasons that follow, TCG's motion to dismiss (doc. no. 6) is denied.

## I.  Background Facts

In February 2005, TCG, a corporation located in Beverly, Massachusetts, entered into a Business Development and Licensee Agreement ("BDL Agreement") with ECCO USA, a corporation located in Londonderry, New Hampshire, for the right to open and operate retail shops selling ECCO footwear and other ECCO products.  The BDL Agreement requires that TCG obtain ECCO USA's approval before executing a lease.  Doc. No. 6-1.  Pursuant to the BDL Agreement, TCG entered into three subleases at three shopping malls in Massachusetts with ECCO Retail, a business, like its parent company, that is based out of Londonderry, New Hampshire. Doc. No. 10-1. It is undisputed that ECCO Retail and ECCO USA are legally distinct entities.  Each sublease states that ECCO Retail and ECCO USA are both parties to the sublease.  Doc. No. 6-1.  The subleases further state that the termination of the BDL Agreement terminates the sublease.  Id.

Of particular importance with respect to the instant motion, the BDL Agreement, and each sublease, contained a choice of law provision calling for application of New Hampshire law, as well as a forum selection clause consenting to the jurisdiction of New Hampshire courts for the submission of

disputes.  Doc. No. 6-3.  The language in the BDL Agreement states:

> The [BDL] Agreement will be governed by and interpreted in accordance with New Hampshire law, excluding its conflict of law principles, and both parties consent to the jurisdiction of the federal and state courts of New Hampshire, waiving any objection to forum non convenes [sic]. . . .

Doc. No. 6-3.

The language in each sublease states:

> [T]he laws of the State of New Hampshire shall govern the validity, performance, and enforcement of this Sublease.  The place of negotiation, delivery, and payment of this sublease being the State of New Hampshire, this Sublease shall be governed by and construed in accordance with the laws of that state, without regard to principles of conflict of laws, except that the enforcement of such matters required to be interpreted under the laws of the state where the Premises are located, shall be construed, enforced and governed by and in accordance with the laws of the State of Massachusetts, without regard to principles of conflict of laws. . . . Sub lessee consents to the jurisdiction of the courts of New Hampshire, Rockingham County, with respect to any such enforcement and action on the part of ECCO Retail . . . .

Doc. Nos. 6-5, 6-6, 6-7.

On or around March 4, 2009, ECCO USA terminated the BDL Agreement.  Shortly thereafter, ECCO Retail terminated its subleases with TCG.  Id.  In April 2009, ECCO USA sued TCG in Massachusetts Superior Court for breach of contract (hereinafter

referred to as the "Massachusetts Case"). See Doc. No. 6-3 (copy of complaint brought by ECCO USA against TCG).

**A. The Massachusetts Case**

In the Massachusetts Case, ECCO USA sought a preliminary injunction against TCG. Doc. No. 6-3. The complaint contains seven counts, which sound in: breach of contract, breach of the convenant of good faith and fair dealing, conversion, replevin, and consumer protection. The complaint also seeks an accounting and attorney's fees. Id. In its factual averments, ECCO USA complained that TCG had failed to (a) submit financial statements as required under the BDL Agreement; (b) pay invoices for products; and (c) pay rent. These alleged failures led to ECCO USA's termination of the BDL Agreement. Thereafter, according to ECCO USA, TCG failed both to turn over collateral in the form of ECCO footwear and accessory products and to arrange for the surrender of the three leased retail shop locations. Id. Although ECCO USA sought an award of damages and attorney's fees, the primary goal of its complaint was injunctive relief. Id. Further, as TCG's operations were located in Massachusetts, ECCO USA wanted a preliminary injunction that would effectively bar TCG's activities in Massachusetts. Doc. 10-1. Discovery in the Massachusetts Case,

which TCG alleges was extensive, closed on August 31, 2009. Doc. No. 6-2.

**B. The Instant Case**

Approximately one year after ECCO USA filed the Massachusetts case, ECCO Retail filed the instant action in Rockingham County Superior Court. In this action, ECCO Retail seeks damages for TCG's alleged failure to pay rent, alleging only one count of breach of contract.

## II. Legal Discussion

TCG seeks dismissal of the instant action on grounds of forum non conveniens. In the alternative, TCG requests that this court stay the instant action until such time as the Massachusetts Case is completed. ECCO Retail objects to both. Each of TCG's arguments is discussed separately below.

**A. Forum Non Conveniens**

TCG first requests that this court dismiss the action under the doctrine of forum non conveniens, arguing that Massachusetts is the most appropriate forum to adjudicate this dispute. Forum non conveniens is "a discretionary tool for the district court to dismiss a claim, even when it has proper jurisdiction." Adelson v. Hananel, 510 F.3d 43, 52 (1st Cir. 2007).

> When a defendant moves for dismissal on forum non conveniens grounds, it bears the burden of showing

> both that an adequate alternative forum exists and
> that considerations of convenience and judicial
> efficiency strongly favor litigating the claim in the
> alternative forum. . . . The first condition is
> usually met if the defendant demonstrates that the
> alternative forum addresses the types of claims that
> the plaintiff has brought and that the defendant is
> amenable to service of process there. To determine
> whether the defendant satisfies the second condition,
> a more involved inquiry is required as the defendant
> must show that the compendium of factors relevant to
> the private and public interests implicated by the
> case strongly favors dismissal.

<u>Interface Partners Int'l Ltd. V. Hananel</u>, 575 F.3d 97, 101 (1st Cir. 2009) (internal quotations and citation omitted) (citing <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508-09 (1947)).

Guided by the Supreme Court in <u>Gulf Oil</u>, the First Circuit has described factors relevant to private interests as including:

> the relative ease of access to sources of proof;
> availability of compulsory process for attendance of
> unwilling, and the cost of obtaining attendance of
> willing, witnesses; the possibility of view of
> premises, if view would be appropriate to the action;
> . . . and the trial judge's consideration of all other
> practical problems that make trial of a case easy,
> expeditious and inexpensive.

<u>Interface Partners</u>, 575 F.3d at 101 (quotations and internal brackets omitted).

The First Circuit has described the factors relevant to public interests as including:

> such things as the administrative difficulties of
> docket congestion; the general goal of having
> localized controversies decided at home, and

> concomitantly, ease of access to the proceedings on
> the part of interested citizens; the trier's relative
> familiarity with the appropriate rules of decision;
> and the burdens of jury duty.

Id. (internal quotations omitted). Recently, the First Circuit reaffirmed the notion that, "a plaintiff enjoys some degree of deference for his original choice of forum" and also cautioned courts that in conducting this analysis, a plaintiff's "forum choice should not be given dispositive weight and dismissal should not be automatically barred when a plaintiff has filed suit in his home forum." Id. at 101-02 (internal quotations omitted).

### 1. Alternative Forum

The first prong is easily satisfied and is not disputed by ECCO Retail. Massachusetts is, as the Massachusetts Case reveals, a forum that addresses the "types of claims" that ECCO Retail has brought, and TCG is amenable to service of process there. Id. at 101. The court therefore moves to the second prong.

### 2. Convenience and Judicial Efficiency

Under this second prong, TCG argues that it would be both inconvenient and unjust to require TCG to defend the instant action, which, according to TCG, is duplicative litigation, identical in every respect to the Massachusetts Case. TCG

asserts that ECCO USA and ECCO Retail are, for practical purposes, the same corporate entity, and that ECCO USA and ECCO Retail are engaging in "vexatious" litigation tactics by filing the "same" lawsuit in two different venues. The court disagrees.

TCG's contention that the Massachusetts Case is identical to the instant action is inaccurate in two critical respects. First, the parties do not dispute that ECCO USA and ECCO Retail are two distinct legal entities. ECCO USA filed the Massachusetts Case; ECCO Retail filed the instant case. Second, the cause of action in the Massachusetts Case is distinct from the instant lawsuit. The Massachusetts Case seeks primarily injunctive relief against TCG, and, although it includes factual averments pertaining to TCG's failure to pay rent, it does not include a breach of contract claim for TCG's alleged failure to pay rent. In the instant litigation, ECCO Retail asserts only one claim: a breach of contract claim for TCG's failure to pay rent. In short, while the two cases are factually related, they involve different parties and claims.

With respect to the factors relevant to private interests, it should be no surprise that these factors weigh equally whatever venue is selected, as the venues are within 100 miles

of each other.  Both venues offer ease of access to sources of proof; unwilling witnesses can be compelled to attend in either jurisdiction; the cost of obtaining willing witnesses would be comparable in either jurisdiction; neither party has suggested that a view is necessary in either case, but if a view were needed, it could be arranged by a New Hampshire court; and any "practical problems" associated with trial in New Hampshire versus Massachusetts on this breach of contract action are not readily apparent.

Nor do the factors relevant to public interests weigh in either venue's favor.  ECCO Retail is a New Hampshire corporation that contracted with TCG, a Massachusetts corporation, to lease rental properties in three malls in Massachusetts.  ECCO Retail, as a New Hampshire corporation, has an interest in having this contract dispute adjudicated in its home state.  It would be difficult to describe such a dispute as "localized" in either New Hampshire or Massachusetts; either venue could be described as "local" to the dispute.  Interested citizens would have easy access to the trial whether it occurs in New Hampshire or Massachusetts.

Not one of the private or public factors provides reason for this court to disturb ECCO Retail's choice of New Hampshire

as its selected forum. This is particularly the case where the parties agreed in advance that any disputes under the three leases would be decided by a New Hampshire court, specifically a court in Rockingham County, and be governed by New Hampshire law.

While ECCO USA could have brought the breach of contract claim in the Massachusetts Case, it elected not to litigate that particular action alongside its requests in Massachusetts for injunctive relief. Even though a wholly-owned subsidiary of ECCO USA, ECCO Retail is a separate legal entity responsible for managing lease agreements for ECCO USA. The fact that ECCO Retail elected to bring the contract dispute in the forum which the parties' pre-selected as the appropriate forum, a location less than 100 miles from TCG's headquarters can hardly be described as "vexatious" or "oppressive."

As stated above, plaintiff's choice of forum is also the place that the parties contracted would be the forum for any disputes under the three subleases. Cf. Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda., 906 F.2d 45, 53 (1st Cir. 1990) (forum selection clause should be upheld where it "was agreed to in an arm's length negotiation by experienced and sophisticated businessman") (internal quotations

omitted). While it may be inconvenient for TCG to have to defend related actions brought by related entities in different courts, such inconvenience can best be described as a cost of doing business in Massachusetts with two New Hampshire corporations. This is not the type of inconvenience that the doctrine of forum non conveniens is designed to address. Accordingly, TCG's request to dismiss this action on grounds of forum non conveniens is denied.

### B. Abstention

TCG requests, in the alternative, for this court to stay this proceeding until the Massachusetts Case is over. In limited instances, federal courts may stay or dismiss proceedings that overlap with concurrent litigation in state court. Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 819 (1976). However, the Supreme Court has counseled that "'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction,'" and federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 15 (1983) (quoting Colo. River, 424 U.S. at 817). Likewise, the First Circuit has recently

explained that "[t]he crevice in federal jurisdiction that Colorado River carved is a narrow one. Of all the abstention doctrines, it is to be approached with the most caution, with 'only the clearest of justifications' warranting dismissal." Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 27 (1st Cir. 2010) (quoting Colo. River, 424 U.S. at 819).

The court's authority to find such a clear justification is confined by an "exceptional-circumstances test," whose non-exclusive list of factors have been drawn from Colorado River and its progeny. See Jimenez, 597 F.3d at 27 *(quoting Moses H. Cone, 460 U.S. at 16). Those factors include:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required.

Jimenez, 597 F.3d at 27-28, (quoting Colo. River, 424 U.S. at 818-19). The court's decision "'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted

in favor of the exercise of jurisdiction.'" Jimenez, 597 F.3d at 28 (quoting Moses H. Cone, 460 U.S. at 16). Because the analysis is weighted heavily in favor of the exercise of federal jurisdiction, it is, as the First Circuit noted, not surprising that "the cases that satisfy this test are few and far between." Jimenez, 597 F. 3d at 28.

The present case is not such a case. As an initial matter, it is not clear that the Massachusetts Case qualifies as "concurrent" or "parallel" litigation such that it warrants a Colorado River analysis. The First Circuit has held, however, that Colorado River does not require "perfect identity of issues." Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 533 (1st Cir. 1991). See also Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1287 (7th Cir. 1988) (actions are parallel under Colorado River where "substantially the same parties are contemporaneously litigating substantially the same issues in another forum"). Certainly the Massachusetts Case and this federal action can be described as "related cases." However, they involve different plaintiffs and different claims for relief. This state court contract action is discrete from the issues being litigated in the Massachusetts Case; ECCO USA did not bring a contract action for TCG's failure

to pay rent.  See McLaughlin v. United Va. Bank, 955 F.2d 930, 935 (4th Cir. 1992) (finding actions not "parallel" where the federal contract claim was not being litigated in the state forum).

Even assuming the actions are parallel, application of the multi-factor analysis in this case does not call for a result that would overcome the strong presumption in favor of exercising federal jurisdiction.  That analysis follows.

### 1. Whether Either Court Has Assumed Jurisdiction Over a Res

This factor is neutral.  TCG concedes that neither court has assumed jurisdiction over a res.

### 2. The Geographical Inconvenience of the Federal Forum

This factor is neutral.  The two courts at issue in both cases are separated by less than 100 miles.  The plaintiffs in both cases live in New Hampshire.  TCG's corporate residence is in Beverly, Massachusetts.

### 3. The Desirability of Avoiding Piecemeal Litigation

This factor is neutral.  While TCG has asserted there is a risk of inconsistent rulings, it has not persuaded the court of this assertion.  The two cases contain different legal claims and prayers for relief.  ECCO USA could have included ECCO

Retail and its "failure to pay rent" claim in the Massachusetts Case, thereby placing the entirety of the dispute in one court. Such a decision would have been more convenient for TCG, the defendant common to both cases. While TCG has argued it will be inconvenient for it to defend the actions in different courts, it has not shown that there is a risk of inconsistent results or verdicts. See Jimenez, 597 F.3d at 29 (explaining that "piecemeal litigation" refers to additional factors that place the case "beyond the pale of duplicative proceedings" because a "duplication of effort, while wasteful, is not exceptional") (internal quotations omitted).

### 4. The Order in Which the Forums Obtained Jurisdiction

This factor tilts toward abstention. ECCO USA brought the Massachusetts Case approximately one year before ECCO Retail filed the instant lawsuit, and discovery in that case is completed. This factor is not determinative, however. I note the possibility that certain depositions and other discovery materials may be used in either case.

### 5. Whether State or Federal Law Controls

While state law will govern this contract dispute, this factor does not tilt in favor of abstention. The presence of state law issues weighs in favor of abstention only in rare

15

cases, when a case presents complex questions of state law best resolved by a state court.  Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 15 (1st Cir. 1990).  TCG has not shown that the Massachusetts court is more capable than this court in resolving the issues of state law, including New Hampshire law, that may arise in this case.

### 6. The Adequacy of the State Forum to Protect the Parties' Interests

The Massachusetts court is adequate to protect the parties' interests, but this factor is neutral.  The "fact that the [state court] might be an adequate forum does not militate in favor of abstention."  United States v. Fairway Capital Corp., 483 F.3d 34, 43 (1st Cir. 2007).  This factor is important "only when it disfavors abstention."  Id.

### 7. The Vexatious or Contrived Nature of the Federal Claim

This factor is neutral.  While TCG alleges that ECCO Retail's lawsuit is "vexatious," the record does not support such a claim.  Rather, the record suggests that ECCO USA brought the Massachusetts Case to obtain injunctive relief in the forum where the enforcement would occur.  ECCO USA's litigation largely concerns the return of its product from TCG.  ECCO USA's decision to seek that particular form of relief in Massachusetts

appears reasonable on this record. ECCO Retail's lawsuit against TCG is, as explained above, entirely different in nature from that brought by its parent. ECCO Retail's decision to bring the contract dispute in its home state, the state whose law will likely control the dispute and the state wherein the parties agreed disputes would be litigated, is also reasonable on this record. Nothing about ECCO Retail's decision to litigate the contract dispute in New Hampshire rises, on this record, to the level of "vexatious" or "contrived."

8. **Respect for the Principles Underlying Removal Jurisdiction.**

This factor is neutral. The principles at issue are that only a defendant has a right to remove a case to federal court. This factor militates in favor of abstention when the same plaintiff seeks to relitigate issues in state and federal courts. Here, different plaintiffs are litigating different, albeit related, claims.

### III. Conclusion

In this case, there is one factor ("first in time") that counsels in favor of abstention. However, this factor is not so weighty that it amounts to an exceptional circumstance calling for abstention. For reasons similar to those that guided the court's decision on the forum non conveniens claim, this court

17

honors its "unflagging obligation" to exercise its jurisdiction. Moses H. Cone, 460 U.S. at 16.

For the above reasons, TCG's motion to dismiss (doc. no. 6) is DENIED.

SO ORDERED.

_____
Landya B. McCafferty
United States Magistrate Judge

Dated:  November 3, 2010

cc:   David A. Anderson, Esq.
      Rebecca N. Barnes, Esq.
      Michael R. Hackett, Esq.
      Daniel B. Winslow, Esq.